IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| EVERGREEN ENERGY, INC., et al., | ) | Jointly Administered |
| | ) | |
| | ) | Case No. 12-10289 (KJC) |
| Debtors. | ) | |
| | ) | D.I. Ref. No. 13 |

**AFFIDAVIT OF PATTI L. SMITH IN SUPPORT OF THE
MOTION OF PRIME RATE PREMIUM FINANCE CORP., INC.
FOR RELIEF FROM THE AUTOMATIC STAY**

| | |
|---|---|
| State of South Carolina | ) |
| | ) ss |
| County of Florence | ) |

NOW COMES Patti L. Smith, who, being duly sworn according to law, does depose and say:

1.  My name is Patti L. Smith, and I am Carrier Return and Collection Manager – Vice President of Prime Rate Premium Finance Corp., Inc. ("Prime Rate") and am authorized to submit this affidavit on Prime Rate's behalf in support of the Motion of Prime Rate Premium Finance Corp., Inc. for Relief from the Automatic Stay (the "Motion").

2.  Prime Rate is an insurance premium finance company licensed to do business in the State of Colorado.

3.  Prime Rate's business is limited solely to insurance premium financing. It does not underwrite or procure insurance. Prime Rate acts as a lending institution, financing insurance premiums for insureds.

4.  Prime Rate and Evergreen Energy, Inc. (the "Debtor") are parties to a Premium Finance Agreement entered into on or about August 31, 2011 (the "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit A.

5.  The Agreement is a standard form.

6.  The Agreement provides that as security to collateralize the loan, the Debtor granted to Prime Rate a security interest in unearned premiums and other sums that may be payable under the financed insurance policies. The Agreement also expressly grants Prime Rate power of attorney so that

4324985

Prime Rate may exercise its rights to cancel the financed policies in the event the Debtor defaults on its obligations under the Agreement.

7. Under the Agreement, the Debtor financed $107,804.54 in insurance premiums with Prime Rate. The agreed upon finance charge was $2,011.62. The Debtor agreed to make payments in the amount of $13,727.02 per month on the 31st day of each month for eight (8) months. The payments required under the Agreement are collateralized by the unearned premiums and other sums that may be payable under the financed insurance policies.

8. The payment due January 31, 2012 has not been made and the amount of $13,727.02 is now overdue, exclusive of late charges and other fees due pursuant to the Agreement. The Debtor owes Prime Rate $41,867.41, inclusive of finance charges earned and to be earned over the life of the loan.

9. Under normal practice, in the absence of the bankruptcy filing and the automatic stay, Prime Rate would immediately exercise its rights to cancel the Debtor's insurance.

10. Prime Rate's security interest is diminishing by approximately $349.08 per day as calculated in accordance with standards in the insurance industry and the terms of the Agreement.

11. The Debtor is in default and owes to Prime Rate at least the payment that was due January 31, 2012 in the amount of $13,727.02. The next regularly scheduled payment under the Agreement is due at the end of February 2012 in the amount of $13,727.02.

12. On the Petition Date, Prime Rate's collateral was valued at $66,695.15 a sum that exceeded the amount then due of $41,867.41. Thus, Prime Rate was, as of the Petition Date, oversecured. However, because of the daily diminution of $349.08 in the value of the collateral, the unearned premiums, the value of the collateral will be $56,571.83 on February 21, 2012.

*[Remainder of page intentionally left blank]*

FURTHER AFFIANT SAYETH NOT

_____

Name:  Patti L. Smith

Title:   Carrier Return and Collection Manager –
         Vice President

     Sworn and subscribed before me, a Notary Public for the State and County aforesaid, this *13th* day of February 2012.

_____

Notary Public

My Commission expires:
November 25, 2013

4324985

3

# EXHIBIT A

**PRIME RATE PREMIUM FINANCE CORPORATION, INC.**
2141 Enterprise Dr. P.O. Box 100507      www.primeratepfc.com
Florence, South Carolina 29502-0507      Phone: (800) 777-7458
CO License No.

**PREMIUM FINANCE AGREEMENT**
ACCOUNT NO.     CO-5897737

Insured Name:
EVERGREEN ENERGY INC
1225 17TH ST STE 1300
DENVER, CO 80202
(303) 293-2992

Agent/Broker/Producer:
CHARTER INSURANCE & 10723
CONSULTING INC
PO BOX 421159
ATLANTA, GA 30342
(843) 617-5866

MEH
9/11/11

| Policy Eff. Date | Term | Policy Number | Name of Insurance Company and Name and Address of General Or Policy Issuing Agent | R | Type of Coverage | Total Premium |
|---|---|---|---|---|---|---|
| 07/31/2011 | 12 | 3580656 | 13204-FEDERAL INSURANCE CO | Y | 54 COMM PACK | $25,416.00 |
| 07/31/2011 | 12 | 73528153 | 13204-FEDERAL INSURANCE CO | Y | 53 C/AUTO-LIAB | $1,080.00 |
| 07/31/2011 | 12 | 35434013I | 13204-FEDERAL INSURANCE CO | Y | 54 COMM PACK | $11,240.00 |
| 07/31/2011 | 12 | XOOG25832930 | 23070-ACE PROPERTY & CASUALY INS CO | Y | 66 UMBRELLA/XC | $30,000.00 |
|  |  |  | See addendum for remaining policies detail. |  |  | $76,003.54 |

**Creditor: Prime Rate Premium Finance Corporation, Inc.**       Federal Truth in Lending Disclosures

| (A) Total Premiums | (B) Cash Down Payment | (C) Amount Financed (The amount of credit provided to you or on your behalf) | (D) FINANCE CHARGE (The dollar amount the credit will cost you) | (E) Total of Payments (The amount you will have paid after you have made all payments as scheduled) | (F) ANNUAL PERCENTAGE RATE (The cost of your credit as a yearly rate) |
|---|---|---|---|---|---|
| $143,739.54 | $35,935.00 | $107,804.54 | $2,011.62 | $109,816.16 | 4.95 % |

You have the right to receive an itemization of the Amount Financed
[X] I want an Itemization
[ ] I do not want an Itemization

Your PAYMENT SCHEDULE will be:      * Includes a non-refundable service charge of $25.00

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 8 | $13,727.02 | On the 31 st  Day of each month.
Beginning  08/31/2011 |

**Security:** You are giving a security interest in any and all unearned or return premiums and dividends which may become due under the policies(s) being purchased.

**Late Charge:** You will be charged $15.00 for any payment received more than 10 days after the payment due date. If the Agreement insures a commercial risk, you will be charged 5% of the payment, subject to a $10.00 minimum, for any payment received more than 10 days after the due date.

**Cancellation Charge:** You will be charged $15.00 if Prime Rate cancels any insurance policy in accordance with the terms of this Agreement if the Agreement insures a commercial risk.

**Prepayment:** If you voluntarily prepay in full prior to the last installment due date you will not be charged a prepayment fee and you may be entitled to a refund of part of the finance charge.

**See Above** and on the last page of this document for any additional information about non-payment default, any repayment in full before the scheduled date, and prepayment refunds and penalties.

In consideration of payments(s) to be made to PRIME RATE PREMIUM FINANCE CORPORATION, INC. ("PR") to the above insurance companies ("Insurers"), their agents, representatives, or producer, the ABOVE NAMED insured ("Insured") (jointly and severally if more than one):

(1) Promises to pay to the order of PR at the above address, the Total of Payments in accordance with the Payment Schedule set forth in the above Truth-in-Lending Disclosures as well as any other sum due pursuant to this Agreement.

(2) Irrevocably appoints PR as Attorney-In-Fact with full authority to effect cancellation of the policies covered hereby or any substitution, rewrite or renewal thereof in accordance with the provisions herein, to receive all sums assigned to PR or in which it has granted PR a security interest. PR may execute and deliver on behalf of the Insured all documents, forms and notices relating to the policies covered hereby in furtherance of this Agreement. The Power of Attorney is coupled with an interest and the powers given herein may be exercised by the Attorney-In-Fact, or its successors and assigns.

(3) Acknowledges that it has received a copy of all pages of this Agreement and if the borrower is a consumer, the Insured acknowledges that he has received a copy of PR's Privacy Statement.

**THE INSURED AGREES TO THE PROVISIONS ABOVE AND ON THE FOLLOWING PAGE(S) OF THIS AGREEMENT.**

**NOTICE:** A. Read all pages of this Agreement before you sign. B. You are entitled to a completely filled in copy of this Agreement. C. Keep your copy of this Agreement to protect your legal rights. D. Under the law, you have the right to pay off in advance the full amount due and under certain conditions to obtain a partial refund of the finance charge.

Evergreen Energy Inc.
INSURED'S NAME        SIGNATURE OF INSURED OR AUTHORIZED REPRESENTATIVE        TITLE: EVP/General Counsel & Secretary        DATE: Aug. 30, 2011

INSURED'S NAME        SIGNATURE OF INSURED OR AUTHORIZED REPRESENTATIVE        TITLE        DATE

**AGENT/BROKER/PRODUCER'S CERTIFICATION**

The Agent/Broker/Producer warrants and agrees: 1. The insurance policies listed on this Agreement are in force and the information and the premiums are correct. 2. The Insured has received a copy of this Agreement, has authorized this transaction and recognizes the security interest assigned herein. 3. All of PR's guidelines and eligibility requirements have been complied with. 4. A proceeding in bankruptcy, receivership or insolvency has not been instituted by or against the named Insured. 5. No audit or reporting form policies or policies subject to retrospective rating or minimum earned premiums are included, except as indicated. The deposit or provisional premiums are not less than anticipated premiums to be earned for the full term of the policies. 6. All of the policies are cancelable by the Insured and unearned premium will be calculated on the standard short-rate or pro-rata tables. 7. To hold in trust for PR any payments made or credited to the Insured through or to the undersigned, directly or indirectly, actually or constructively by the insurance companies or PR and to pay the monies as well as any unearned commissions to PR promptly upon demand to satisfy the outstanding indebtedness of the Insured. Any lien the undersigned has or may acquire in the return premium arising out of the listed insurance policies is subordinated to PR's lien or security interest therein. There are no other liens on the unearned premium and all premiums will be paid to the Insurers.

**THE UNDERSIGNED FURTHER WARRANTS THAT IT HAS RECEIVED THE DOWN PAYMENT AND ANY OTHER SUMS DUE AS REQUIRED BY THE AGREEMENT AND IS HOLDING SAME, OR THEY ARE ATTACHED TO THIS AGREEMENT.**

Charter Insurance        Janet Bradley        Acct Mgr        8-31-11
AGENT/BROKER/PRODUCER        SIGNATURE OF AGENT/BROKER/PRODUCER        TITLE        DATE

**PRIME RATE PREMIUM FINANCE CORPORATION, INC.**
2141 Enterprise Dr. P.O. Box 100507
Florence, SC 29502-0507

www.primeratepfc.com
Phone: (800) 777-7458

PREMIUM SERVICE AGREEMENT
ACCOUNT NO.    CO-5897737

Insured Name:

EVERGREEN ENERGY INC
1225 17TH ST STE 1300
DENVER, CO 80202
(303) 293-2992

Agent/Broker/Producer

CHARTER INSURANCE & 10723
CONSULTING INC
PO BOX 421159
ATLANTA, GA 30342
(843) 617-5866

MEH
9/1/11

### ADDENDUM

| Policy Eff. Date | Term | Policy Number | Name of Insurance Company or General Agent or Policy Issuing Agent | R | Type of Coverage | Total Premium |
|---|---|---|---|---|---|---|
| 07/31/2011 | 12 | 37310835 | 37014-CHUBB CUSTOM INSURANCE CO | Y | 78 POLUTION/L | $39,518.00 |
|  |  |  | RTax $885.54 |  |  | $885.54 |
| 07/31/2011 | 12 | 68048887 | 13204-FEDERAL INSURANCE CO | Y | 58 PROF LIAB | $45,600.00 |

**PRIME RATE PREMIUM FINANCE CORPORATION, INC.**
2141 Enterprise Dr. P.O. Box 100507   www.primeratepfc.com
Florence, South Carolina 29502-0507   **Phone: (800) 777-7458**
**COLORADO**

PREMIUM FINANCE AGREEMENT
ACCOUNT NO.

Insured Name:                                                        Agent/Broker/Producer:

TIN/SSN:

| Policy Eff. Date | Term | Policy Number | Name of Insurance Company and Name and Address of General Or Policy Issuing Agent | R | Type of Coverage | Total Premium |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Creditor:  **Prime Rate Premium Finance Corporation, Inc.** | | | | Federal Truth in Lending Disclosures | | |
|---|---|---|---|---|---|---|
| (A) Total Premiums | (B) Cash Down Payment | (C) Amount Financed (The amount of credit provided to you or on your behalf) | (D) **FINANCE CHARGE** (The dollar amount the credit will cost you) * | (E) Total of Payments (The amount you will have paid after you have made all payment as scheduled) | (F) **ANNUAL PERCENTAGE RATE** (The cost of your credit as a yearly rate) | |
| | | | | | | |

Your PAYMENT SCHEDULE will be:

*Includes a non-refundable service charge of $ [variable]

You have the right to receive an Itemization of the Amount Financed

___ I want an Itemization

___ I do not want an Itemization

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| | | |

<u>Security</u>: You are giving a security interest in any and all unearned or return premium(s) and dividends which may become due under the policy(ies) being purchased.

<u>Late Charge</u>: You will be charged $15.00 for any payment received more than 10 days after the payment due date.  If the Agreement insures a commercial risk, you will be charged 5% of the payment, subject to a $10.00 minimum, for any payment received more than 10 days after the due date.

<u>Cancellation Charge</u>: You will be charged $15.00 if Prime Rate cancels any insurance policy in accordance with the terms of this Agreement if the Agreement insures a commercial risk.

<u>Prepayment</u>: If you voluntarily prepay in full prior to the last installment due date you will not be charged a prepayment fee and you may be entitled to a refund of part of the finance charge.

<u>See Above</u> and on the last page of this document for any additional information about non-payment default, any repayment in full before the scheduled date, and prepayment refunds and penalties.

In consideration of the payment(s) to be made by PRIME RATE PREMIUM FINANCE CORPORATION, INC. ("PR") to the above insurance companies ("Insurer(s)"), their agents, representatives, or producer, the ABOVE NAMED insured ("Insured") (jointly and severally if more than one):

(1) Promises to pay to the order of PR at the above address, the Total of Payments in accordance with the Payment Schedule set forth in the above Truth-in-Lending Disclosures as well as any other sums due pursuant to this Agreement.

(2) Irrevocably appoints PR as Attorney-In-Fact with full authority to affect cancellation of the policies covered hereby or any substitution, rewrite or renewal thereof in accordance with the provisions herein, to receive all sums assigned to PR or in which it has granted PR a security interest.  PR may execute and deliver on behalf of the Insured all documents, forms and notices relating to the policies covered herein in furtherance of this Agreement.  The Power of Attorney is coupled with an interest and the powers given herein may be exercised by the Attorney-In-Fact, or its successors and assigns.

(3) Acknowledges that it has received a copy of all pages of this Agreement and if the borrower is a consumer, the Insured acknowledges that he has received a copy of PR's Privacy Statement.

## THE INSURED AGREES TO THE PROVISIONS ABOVE AND ON THE FOLLOWING PAGE(S) OF THIS AGREEMENT

**NOTICE:  A. Read all pages of this Agreement before you sign.  B. You are entitled to a completely filled in copy of this Agreement. C. Keep your copy of this Agreement to protect your legal rights.  D. Under the law, you have the right to pay off in advance the full amount due and under certain conditions to obtain a partial refund of the finance charge.**

_____    _____    _____    _____
**INSURED'S NAME**              **SIGNATURE OF INSURED OR AUTHORIZED REPRESENTATIVE**     **TITLE**       **DATE**

_____    _____    _____    _____
**INSURED'S NAME**              **SIGNATURE OF INSURED OR AUTHORIZED REPRESENTATIVE**     **TITLE**       **DATE**

### AGENT/BROKER/PRODUCER'S CERTIFICATION

The Agent/Broker/Producer warrants and agrees: 1. The insurance policies listed on this Agreement are in force and the information and the premiums are correct.  2. The Insured has received a copy of this Agreement, has authorized this transaction and recognizes the security interest assigned herein.  3. All of PR's guidelines and eligibility requirements have been complied with.  4. A proceeding in bankruptcy, receivership or insolvency has not been instituted by or against the named Insured.  5. No audit or reporting form policies or policies subject to retrospective rating or minimum earned premiums are included, except as indicated.  The deposit or provisional premiums are not less than anticipated premiums to be earned for the full term of the policies.  6. All of the policies are cancelable by the Insured and unearned premiums will be calculated on the standard short-rate or pro-rata tables.  7. To hold in trust for PR any payments made or credited to the insured through or to the undersigned, directly or indirectly, actually or constructively by the insurance companies or PR and to pay the monies as well as any unearned commissions to PR promptly upon demand to satisfy the outstanding indebtedness of the Insured.  Any lien the undersigned has or may acquire in the return premiums arising out of the listed insurance policies is subordinated to PR's lien or security interest therein.  There are no other liens on the unearned premiums and all premiums will be paid to the insurers.

**THE UNDERSIGNED FURTHER WARRANTS THAT IT HAS RECEIVED THE DOWN PAYMENT AND ANY OTHER SUMS DUE AS REQUIRED BY THE AGREEMENT AND IS HOLDING SAME OR THEY ARE ATTACHED TO THIS AGREEMENT**

_____    _____    _____    _____
**AGENT/BROKER/PRODUCER**       **SIGNATURE OF AGENT/BROKER/PRODUCER**              **TITLE**       **DATE**

## REMAINING PROVISIONS OF PREMIUM FINANCE AGREEMENT

(4) Assigns to PR as security for the total amount payable hereunder any and all unearned or return premiums and dividends which may become payable under the insurance policies covered by this Agreement and loss payments under said policies which reduce the unearned premiums (subject to any loss payee or mortgage interests), and hereby authorizes and instructs its insurer(s) to pay such funds or proceeds to PR. The Insured gives to PR a security interest in all items mentioned in this paragraph. The Insured further grants to PR its interest which may arise under any state insurance guarantee fund relating to any policy shown on the front of this Agreement.

(5) Agrees in the event of a default in payment of any installment, PR may cancel the policies covered hereby after giving the notice required as prescribed by law. In case of cancellation, the unpaid balance due to PR shall be immediately payable by the Insured. The Insured understands PR may collect and enforce repayment of the indebtedness evidenced hereby without recourse to any security underlying this Agreement. If cancellation occurs, the Insured agrees to pay a finance charge on the balance due at the contract rate of interest until that balance is paid in full or until such other date as permitted by law.

(6) Agrees that any payments made to PR after Notice of Cancellation has been mailed to the insurer will be credited to the Insured's account and shall not constitute reinstatement or obligate PR to request reinstatement of any insurance policy. Any sum received from an insurer shall be credited to the Insured's indebtedness to PR, and any surplus shall be paid to whomever it is entitled. If the refund is less than $1.00, no refund will be made. In case of a deficiency, the Insured shall remain liable and pay the same with interest as set forth above. The Insured will not be required to pay an amount due under this Agreement that is less than $5.00.

(7) May voluntarily prepay the full amount due and under certain conditions be entitled to receive a partial refund of the FINANCE CHARGE computed in accordance with the method prescribed by law, after deducting any fully earned charge permitted by law.

(8) Understands that the FINANCE CHARGE begins to accrue as of the earliest Policy Effective Date, unless otherwise specified.

(9) Authorizes PR to correct or remedy any error or omission in the completion of this Agreement; the Insured will be notified at the address shown hereon of any change in Blocks (A) thru (F), or in the Federal Truth-In-Lending Disclosures or in the itemization of the Amount Financed Disclosures.

(10) Warrants that each of the policies covered hereunder (or a binder thereof), except for policies written through residual markets, has been issued to the Insured, is in full force and effect and that no other power of attorney or other encumbrance or assignment is in effect nor will same be put into effect, except for the interest of mortgagees or loss payees, and agrees that all rights conferred upon PR shall inure to PR's successors or assigns.

(11) Agrees that, in the event the total premiums are greater than that shown hereon, or if the Insured requests additional premiums be added or additional premiums financed, this Agreement may be amended to reflect the actual premiums and the Insured will either (i) pay the difference in premium due or (ii) pay any required additional down payment and any additional finance charge permitted by law. In such event PR will forward the Insured a revision notice showing all information required by law.

(12) Agrees that (i) PR assumes no liability as an insurer, (ii) this Agreement shall not be effective until a written acceptance is mailed by PR, (iii) singular words used herein shall be deemed plural and vice versa as the sense of the Agreement demands, (iv) if any court of competent jurisdiction finds any part or provision of this Agreement to be invalid or unenforceable, such findings shall not affect any other part or provision.

(13) Agrees that if this transaction is for other than personal, family or household purposes or more than $50,000 none of the provisions of the Federal Truth-In-Lending Act or the regulations promulgated thereunder shall apply.

(14) Agrees that should a check be returned for insufficient or uncollected funds, PR may re-present the check electronically and collect a service fee electronically equal to the maximum fee allowed by law.

(15) Agrees that if payment is made by check, PR may use the check solely as a source document and as the basis for an electronic transaction. Receipt of the check will be deemed to be authorization for an ACH debit to the Insured's account.

(16) Agrees that any refunds may be applied against any prior debts owed PR.

(17) Agrees that the insurance agent or broker named in this Agreement is the Insured's agent, not PR's, and PR is not legally bound by anything the agent or broker represents to the Insured orally or in writing.

(18) Agrees that the money paid by PR is only for the premium as determined at the time the insurance policy is issued. PR's payment shall not be applied by the insurance company to pay for any additional premiums owed by the Insured as a result of any type of misclassification of the risk. The Insured agrees to pay the company any additional premiums which become due for any reason. PR may assign to the company any rights it has against the Insured for premiums due the company in excess of the premiums returned to PR.

(19) Agrees that a $5.00 Administration Fee will be applied to any refund check that falls under the Abandoned Property Procedures if permitted by law.

(20) Agrees to pay reasonable attorneys fees and/or collection agency fees and all other costs of collection if this contract is referred for collection to any collection agency and/or attorney not a salaried employee of PR if permitted by law.

(21) Understands this Agreement is not required as a condition of the Insured obtaining insurance coverage.

(22) Waives and releases PR from any claims, lawsuits and causes of action which may be related to any prior loans and/or to any act or failure to act prior to the time this Agreement becomes a binding contract, pursuant to paragraph 12ii. PR's liability for breach of any of the terms of this Agreement or the wrongful exercise of any of its powers shall be limited to the amount of the principal balance outstanding, except in the event of gross negligence or willful misconduct. The laws of the State of Colorado will govern this Agreement and any claims against PR shall be litigated exclusively in the state or federal courts of South Carolina, for Florence County.

(23) Represents that the Insured is not insolvent or presently the subject of any insolvency proceeding.

(24) Agrees to pay to the insurance company the earned premium computed in accordance with the policy provisions which is in excess of the amount of premium advanced by PR which the insurance company retains if the insurance policy issued to the Insured is auditable or is a reporting form policy or is subject to retrospective rating.

(25) Certifies that it is empowered to enter into this Agreement without any restrictions and that the individual signing it has been fully empowered to do so. To the extent that the Insured either possesses or claims sovereign immunity for any reason, such sovereign immunity is expressly waived and the Insured agrees to be subject to the jurisdiction of the laws and courts set forth in the preceding paragraphs.

(26) Agrees that the money paid by PR is only for the premium as determined at the time the insurance policy is issued. PR's payment shall not be applied by the insurance company to pay for any additional premiums owed by the Insured resulting from any type of misclassification of the risk. The Insured shall pay to the insurer any additional premiums or any other sums that become due for any reason. If PR assigns the same account number to any additional extension or extensions of credit, (i) this Agreement and any other Agreement(s) identified by such account number shall be deemed to comprise a single and indivisible loan transaction, (ii) any default with respect to any component of such transaction shall be deemed a default with respect to all components of such transaction, and (iii) any unearned premiums relating to any component of such transaction may be collected and applied by PR to the totality of such transaction.

### NOTICE: SEE PREVIOUS PAGE FOR IMPORTANT INFORMATION

CO 11